ALAN B. and LOUISE M. LOEFFLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Loeffler v. Commissioner
Docket No. 12564-81
United States Tax Court
T.C. Memo 1983-503; 1983 Tax Ct. Memo LEXIS 275; 46 T.C.M. (CCH) 1153; T.C.M. (RIA) 83503; August 22, 1983. Michael E. Zaden, for the petitioners. Karen Nicholson Sommers, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax in the amounts of $17,797 and $23,678 for the years 1977 and 1978, respectively, and additions to tax under section 6653(a) [1] in the amounts of $890 and $1,184, respectively, for these years. *278 The issues for decision are (1) whether petitioners are taxable on income resulting from services of Alan B. Loeffler purportedly assigned to a trust created by petitioners entitled the "Alan B. Loeffler Family Trust" and on certain income from property assigned to that trust; and (2) whether petitioners are liable for the additions to tax for intentional disregard of rules and regulations or negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Alan B. Loeffler and Louise M. Loeffler, husband and wife, who resided in Escondido, California, at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1977 and 1978. For the calendar year 1977, petitioners filed an amended return. Petitioner Alan B. Loeffler is a medical doctor who specialized in pathology during the years here in issue. In 1970, Dr. Loeffler formed the Alan B. Loeffler, M.D., Inc., corporation (Loeffler Corporation). Dr. Loeffler was the president, sole shareholder and sole employee of the Loeffler Corporation from the time it was formed through 1978. The Loeffler Corporation received its income under *279 a fee percentage contract with another corporation, which, as a prime contractor, provided the services of several pathologists to a hospital. Some of the pathologists who provided their services to the prime contractor were paid fees or salaries as individuals and others were paid as professional corporations, like the Loeffler Corporation. When a professional corporation received fees from the prime contractor corporation, that corporation compensated the individual doctor-pathologist who rendered the actual services to the hospital. On December 16, 1976, Dr. Loeffler, as "creator-grantor," executed an instrument entitled "Declaration of Trust of This Irrevocable Pure Living Trust." The trust was entitled "Alan B. Loeffler Family Trust." By a document executed on December 16, 1976, Louise Loeffler transferred certain property, a part of which was the home in which petitioners lived, the furnishings of that home, and books and automobiles which petitioners owned to Dr. Loeffler, and by a document executed on December 16, 1976, Dr. Loeffler transferred this property and other property to the Alan B. Loeffler Family Trust (Loeffler Family Trust). The properties transferred to *280 the Loeffler Family Trust included "business projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business good will, or other business desired to be engaged in by said Trustees * * *." In the document executed by Dr. Loeffler on December 16, 1976, it was stated that included in the property transferred by Dr. Loeffler to the Loeffler Family Trust was "the exclusive use of my lifetime services and all of the current remuneration accruing therefrom, which, but for this conveyance, would be due and payable to me." On January 3, 1977, the Loeffler Corporation and the Loeffler Family Trust entered into an agreement which provided that since the trust held the rights to Dr. Loeffler's lifetime services under his declaration of trust, it directed Dr. Loeffler to perform services on behalf of the Loeffler Corporation with all remuneration therefrom accruing to the trust. The initial trustees of the trust were Wynton B. Shaw and Mrs. Loeffler. However, in January 1977, Dr. Loeffler was appointed as a trustee and Mr. Shaw resigned. Thereafter, throughout the years here in issue, Dr. and Mrs. Loeffler were the trustees of the trust, *281 Dr. Loeffler being the executive trustee and Mrs. Loeffler the secretary-treasurer. At Some time during the years here in issue one of the Loeffler children was also elected a trustee. The Loeffler Family Trust provided for at least two trustees but did not prohibit additional trustees. A majority of the trustees could act on behalf of the trust. The Loeffler Family Trust contained the following provision as to the duties and powers of the trustees: The aforenamed Trustees, for themselves and their successors IN TRUST, do hereby agree to accept properties, real and personal, to be conveyed and acknowledge acceptance of and delivery of all of the property specified, together with all the terms of the Trust herein set forth, agreeing to conserve and improve the Trust, to invest and reinvest the funds of Said Trust in such a manner as will increase the financial rating of the Trust Estate during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with the Trust Minutes, making distributions of portions of the proceeds and income as in their discretion, and according to *282 the minutes, should be made, making complete periodic reports of business transactions, and upon final liquidation distributing the assets to the beneficiaries as their interests may appear; and in all other respects administering Said Trust Estate in good faith strictly in conformity hereto. For the calendar years 1977 and 1978, the Loeffler Family Trust filed Forms 1041, U.S. Fiduciary Income Tax Return.For the fiscal years ended May 31, 1977, 1978 and 1979, the Loeffler corporation filed Forms 1120, U.S. Corporation Income Tax Return. During the period January 1, 1977, through May 31, 1977, the Loeffler Corporation made payments by check to the Loeffler Family Trust totaling $49,000, representing payments for the services of Dr. Loeffler. This $49,000 was deducted by the Loeffler Corporation on its corporate income tax return for its fiscal year ending May 31, 1977. During the period June 1, 1977, through December 31, 1977, the Loeffler Corporation made payments by check to Dr. Loeffler which were designated on the books of the Loeffler Corporation as salary and deducted as such by the corporation. Four of these checks, two dated in October, one in November and one in December *283 were for $5,750 each, for a total of $23,000. One of the checks, dated June 8, 1977, was in the amount of $1,800 and the notation on the check stub was "salary--partial July." During the calendar year 1978, the Loeffler Corporation made payments to Dr. Loeffler by check, with the check stub notation showing either salary or bonus. On its fiduciary income tax return filed for 1977, the Loeffler Family Trust reported $64,000 as "contract income," and on its 1978 return reported $60,250 as such income. These amounts represented payments made with respect to Dr. Loeffler's services to the hospital. On their original joint Federal income tax return filed for the calendar year 1977, petitioners reported no wages, salaries, or employee compensation, but did report $14,672 as "trustee fees." In an amended return for the calendar year 1977, petitioners reported $23,000 as income from professional services and deducted this amount as "nominee income." On their 1978 income tax return, petitioners reported $67,735 as income from compensation, which was shown to include $60,250 of "nominee income" for which they claimed a deduction. Attached to the 1978 return was a Form W-2 showing *284 compensation received by Dr. Loeffler from the Loeffler Corporation of $67,735. Petitioners, on their 1978 return, reduced the reported "nominee income" deduction by $7,076, stated to be "trustee fee." Respondent in his notice of deficiency increased petitioners' income as reported in 1971 by $64,179, composed of $64,000 of "contract income" reported by the Loeffler Family Trust and $179 of interest income reported by that trust. Respondent decreased petitioners' income by the $14,672 reported as "trustee fees" for the calendar year 1977 and by $508 reported as a distribution from the Loeffler Family Trust with the explanation that these amounts were a return of trust corpus. By amended answer, respondent claimed an increased deficiency for the year 1977 on the basis that the income received by petitioner from his work as a pathologist totaled $73,800 rather than the $64,000 which he determined to be income of petitioner reported as contract income by the trust. For the year 1978, respondent increased petitioners' income as reported by $60,250, which represented the amount deducted by petitioners as "nominee income" transferred to the Loeffler Family Trust; by $4 of interest *285 income; and by $7,200 gross rents and royalties reported by the trust, which respondent determined was income to petitioners under sections 61 and 671 through 678. Respondent, for the year 1978, decreased petitioners' income by $3,076 of the amount reported as "trustee fee" from the Loeffler Family Trust, stating that this amount was a return of corpus. Respondent determined that $4,224 of itemized deductions claimed by the trust for the calendar year 1977 were properly deductible by petitioners and that $5,454 of itemized deductions claimed by the Loeffler Family Trust for 1978 were properly deductible by petitioners. Respondent disallowed the deduction of $2,981 claimed by petitioners as a deduction for the calendar year 1977 for amounts paid for the cost of creating the Loeffler Family Trust on the grounds that this amount was not deductible under section 162 or 212 but was a personal expenditure under section 262. Respondent determined that an additional sales tax in the amount of $281 and an additional charitable contribution of $70 for the year 1977 were properly deductible by petitioners. In the petition as originally filed, petitioners placed in issue all the adjustments *286 made by respondent, including the determination of itemized deductions and the additions to tax under section 6653(a) for each of the years here in issue. At the trial, petitioners offered no evidence with respect to their claimed itemized deductions or the disallowance of the $2,981 expenditure claimed as a deduction for fees to create the Loeffler Family Trust. Pursuant to leave granted by the Court, petitioners at the trial filed an amended petition in which they alleged in part as follows: It is conceded by Counsel that this may be the type of trust that is known in Sections 671 through 677 of the Internal revenue Code of 1954, as amended, hereinafter referred to as "the Code", as a Grantor-type trust. Hence, for purposes of the example we shall concede (although effectively reserving all rights thereto [sic] deny later) that even said trust determined and conceded to be a Grantor trust that the income from said trust must first be assigned back to its rightful owner or assignor. The amended petitioner proceeds to allege in some detail the facts concerning the formation by Dr. Loeffler of the Alan B. Loeffler, M.D., Inc., corporation and alleges that the income *287 resulting from Dr. Loeffler's services as a pathologist, if not properly taxable to the trust, should be taxable to the Loeffler Corporation rather than to petitioners. Petitioners then allege that-- the petitioners wish to state that the corporation who is not a party to the lawsuit; that the Court should hold that liability of tax payment be that of the professional corporation. Additionally, it be held that Section 6501(a) of the Code be applied and that there be a three year expiration of the statute of limitations after filing the corporate tax return. OPINION It is not clear from the position taken by petitioners at the trial whether they still contend that the payments made for services rendered by Dr. Loeffler as a pathologist are properly income assigned to the Loeffler Family Trust. Petitioners have not favored us with a brief. However, it is clear that the payments made for Dr. Loeffler's services were either made directly to him as salary by the corporation and deducted by the corporation or made by the corporation to the trust under the purported authority of the contract entered into between the trust and the corporation, which provided that payment for Dr. *288 Loeffler's services would be made to the trust. Under either of these circumstances, the payments were payments of salary to Dr. Loeffler for services, which income he purported to assign to the trust. Since the decision of the Supreme Court in Lucas v. Earl,281 U.S. 111 (1930), it has been recognized and consistently held that a taxpayer cannot avoid taxation on his income by an anticipatory assignment of that income to another. Although Dr. Loeffler purported to convey his lifetime services to the trust, the record is clear that he continued to be employed by the Loeffler Corporation and that the payments made by the Loeffler Corporation for his services were his income from services, which he attempted to anticipatorily assign to the trust. The Form W-2 attached to the 1978 return, the books of the corporation and the corporate tax returns show that the corporation was making payments for Dr. Loeffler's services either to Dr. Loeffler or, under its purported contract with the trust, to the trust. Dr. Loeffler controlled the earning of the income. The income from the payments made by the Loeffler Corporation for Dr. Loeffler's services is income which is taxable *289 to Dr. Loeffler. Vnuk v. Commissioner,621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner,73 T.C. 1246, 1253-1254 (1980); Wessenberg v. Commissioner,69 T.C. 1005, 1011 (1978). On the facts here present, there is no basis for taxing the amount the corporation paid and deducted for Dr. Loeffler's services to the corporation. The corporation paid for Dr. Loeffler's services and is entitled to its deduction, and the income from those services is Dr. Loeffler's income, properly taxable to him. Dr. and Mrs. Loeffler were the trustees of the trust and the grantors of the trust. [2] The trust provided that there should be not less than two trustees, but that the number might be increased. It provided for action by a majority of the trustees then in office. It is not clear whether at some time during the years here in issue one of the Loeffler children was a trustee, but it is clear that Dr. and Mrs. Loeffler had complete control over the trust and the trust income and that the income could be distributed to them in their sole discretion.The trust instrument gave the trustees *290 broad powers with respect to operation of the trust, payment of compensation to themselves, and use of the trust property. It allowed the trustees to make such distributions of the "proceeds" and income of the trust as in their discretion should be made. The record shows that during the years here in issue distributions were made by the trust to petitioners. Clearly, therefore, under the provision of section 677(a), [3] the income of the trust is taxable to petitioners. Vercio v. Commissioner,supra.
*291 In our view, the entire income of the Loeffler Family Trust was properly considered by respondent as income of petitioners. The record clearly shows that the salary payments made either directly to Dr. Loeffler by the Loeffler Corporation or as "contract payments" by the corporation to the trust because of Dr. Loeffler's services, totaled $73,800 in 1977. The contract payments to the trust were $49,000, and Dr. Loeffler reported $23,000 paid to him in 1977 which he considered "nominee income." These two amounts total $72,000. However, the evidence of record shows that another $1,800 was paid by the corporation to Dr. Loeffler as salary in 1977. Respondent made this showing from the check records of the corporation and petitioners offered no rebuttal evidence. We therefore have concluded that respondent has established this $1,800 as paid by the corporation to Dr. Loeffler in 1977 as well as the $72,000 ($49,000 of "contract payments" plus $23,000 of "nominee income") which Dr. Loeffler or the Loeffler Family Trust reported as income payments for the year 1977 for Dr. Loeffler's services. We therefore sustain respondent's request for an increased deficiency for 1977. Petitioners *292 made no argument as to why the $2,981, which they paid as a fee to Estate Guardian Educational Trust for the establishment of the trust, is deductible. Therefore, they have failed to show error in respondent's disallowance of this claimed deduction. Advice pertaining to rearrangement of property and matters concerning establishment of a trust are generally nondeductible personal expenditures. Epp v. Commissioner,78 T.C. 801, 805 (1982).
Petitioners have made no showing of error in the amount of itemized deductions allowed by respondent. Petitioners have likewise failed to show that their failure to report Dr. Loeffler's income from services and other income which was purportedly assigned to the Loeffler Family Trust was not due to negligence or intentional disregard of rules and regulations. Petitioners have not shown that they consulted an attorney with respect to the establishment of the trust, and in fact Dr. Loeffler testified that he did not seek the advice of a lawyer or an accountant prior to purchasing the trust but relied on the promoters who helped him set up the trust and information he received from a physician friend. In our view, the type of *293 advice which petitioners sought would not be relied on by a reasonable person of Dr. Loeffler's education in making a business decision. On the basis of this record, we conclude that petitioners have failed to show that some part of their underpayment of tax for the years here in issue was not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a).See Wessenberg v. Commissioner, supra at 1015. We decide all issues in this case for respondent, but since respondent has claimed an increased deficiency, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. The parties stipulated that "The petitioners concede that, during 1977 and 1978 they were at all times the sole owners of the Alan B. Loeffler Family Trust, within the meaning of Internal Revenue Code Sections 671 through 677↩." 3. Sec. 677(a) provides as follows: SEC. 677.INCOME FOR BENEFIT OF GRANTOR. (a) General Rule.--The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; (2) held or accumulated for future distribution to the grantor or the grantor's spouse; or (3) applied to the payment of premiums on policies of insurance on the life of the grantor or the grantor's spouse (except policies of insurance irrevocably payable for a purpose specified in section 170(c) (relating to definition of charitable contributions)). This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished.↩